of the North Dakota Coalition of States and other individual council are behind me. The final rule, expanding the definition of waters of the United States, does not trigger any of the seven grounds for this court's exclusive jurisdiction under 33 U.S.C. section 1369b1. Now, we filed these protective petitions out of concern, a concern now realized that the federal agencies would take the view that it falls within subsections E and F of that jurisdictional provision, but the agencies are mistaken for three basic reasons, the plain text of the subsections, the relevant canons of construction in the applicable case law. First, under the plain text, the final rule does not qualify as the promulgation of an affluent limitation or other limitation under sections 1311, 1312, 1316, or 1345 for purposes of subsection E, and for purposes of subsection F, it doesn't fall within the plain language of that provision because it does not issue or deny any permit. Secondly, the... Just with the argument, did we issue the stay by mistake then, without jurisdiction? No, not at all, Your Honor. It's black letter law that the court has jurisdiction to determine its own jurisdiction, and in the process of determining the time it takes for the court to determine its own jurisdiction, it can issue all appropriate orders, including staying proceedings while it does so. I would note that I'd start with this court's decision in National Cotton Council, which is the main case on which my friends on the other side rely to establish jurisdiction here. National Cotton was a case under subsection F, but they interpret National Cotton in a way that fails to reconcile it with the plain language of subsection F and with this court's prior decision in Lake Cumberland. National Cotton was a case about a narrow permitting exemption for certain types of pesticides, and this court held that that narrow permitting exemption fell within subsection F because it was essentially a permitting regulation, but I think if you read National Cotton in context, it was making clear that it was the equivalent to the issuance or denial of a permit, of a general permit. The exemption that was at issue in that case allowed the discharge of the particular pesticides in the particular circumstances that were at issue in the rule. That's far removed from the rule at issue here, which has much more to do with the entire scope of the act than simply with the particular permitting provisions in section 1342. Moreover, I don't see any theory under which a definitional provision that applies to section 1342 to the permitting program and that applies to every part of the act can qualify as the issuance or denial of a permit. That really is the second clause of the holding in National Cotton. The court, and this is only six years ago in an unanimous opinion written by our chief judge, and it says the jurisdictional grant of section F here authorizes the court of appeals to review the regulations governing the issuance of permits under section 402 as well as the issuance or denial of a particular permit. The second clause appears to be consistent with the language of the statute of an issuance or denial of a permit, but the first clause says that we have jurisdiction over regulations governing the issuance of permits. To me, that's broader than the plain language of the statute. However, that I see as a holding of National Cotton, and it's a holding I'm bound by, aren't I not? I agree, Your Honor, but I think you have to read that language in context. You have to read it in a way that reconciles it with its prior decision in Link Cumberland. Well, if the holding is broader than it has to be, it's still the holding, though, isn't it? Well, I think the holding was, as the paragraph before that indicated, was that the particular permitting regulation at issue in that case fell within subsection F. And that particular permitting regulation, it seems to me, was the functional equivalent of the issuance of a permit. Earlier in the decision in National Cotton, if you look at the background section, it talked about how states had been doing the same thing through general permits. These were permits that say, for an entire water body, certain discharges can occur in that water body for certain pollutants. So the exemption that was at issue there was the functional equivalent of a general permit. But even if you disagree that you can't reconcile it with its plain language, I still think that this case is one step removed from National Cotton, because National Cotton was solely about a permitting regulation. It was a narrow change to the CFR governing exemptions from the MPDES permitting process. Now compare that with this rule. This rule applies to the 1342 permitting process, but it applies to every other provision of the Act. So to interpret permitting regulation as broadly as the government does, which suggests that everything falls within subsection F, because every definitional provision would affect the same words in 1342 that exist throughout the statute. And abrogal waters exist in a whole host of things that all parties agree would not be subject to this court's exclusive jurisdiction. The water quality standards in 1313 all agree that they don't fall within this court's jurisdiction. Core permits under 1344, same definition, same change. Those permits don't fall within subsection F. I'm waiting for you to take a breath, but you don't ever seem to take a breath. I want to take you back for just a second to a premise of Judge Griffin's question that's one that just intrigues me. I don't think it's dispositive here, but he implicit in his question, and I think he asked you, wasn't national cotton binding upon us as a decision of the Sixth Circuit? I think you said you thought that it was, but here's I think the interesting nature of this question. The way in which this case gets to us through the referral by the multi-district litigation, or in this case multi-circuit litigation referral, we're actually looking at cases that involve different circuit laws. And I can't find any authority, and I wonder if you found any, that then speaks to whether the circuit law in the circuit where the case happens to end up is in fact binding when it certainly wouldn't be binding if this case was being heard in one of the other circuits that was sent to us. So I think the Sixth Circuit's rule would be binding. I would point to the case that, if I can cite a case that nobody cited in the briefs, Inuit Korean Airlines. It's a D.C. Circuit case that came up in the context of the MDL proceedings where a transferor court transferred it to a transferee court, and the question was whether the transferee court should apply the transferor court's law. And the circuit law in the circuit of which you sit, I think by analogy the same principles would apply. But I think that also goes to show that we have district court cases that will work their way up, and those district court cases, the Eleventh Circuit will be bound by its own precedent. I think all of this ties into one of the key points that we make when we talk about various substantive canons that we argue for. One of those is that jurisdictional rules should be clear, precisely because of this reason that we have to file this protective petition in the circuit courts and file suit in the district court. I think it makes sense for the court to... Let's come back to that. We started with National Cotton, but let's come back to E.I. DuPont and to Crown-Simpson on a little higher or broader level here. Your textual argument is appealing and makes a lot of sense as to just looking at the language. But you look at these Supreme Court cases in the last 35 years or so of Supreme Court law, they certainly seem to be favoring function over text here in connection with how they've interpreted the law both under E and F. And if we just concentrate on that for just a second, the question becomes, what are the reasons that you're advancing why this shouldn't be heard at the circuit level? It should be heard at the district court? Because I'm finding it more difficult to find persuasive reasons there. First off, I disagree with the idea that those cases did away from the text, but I'll answer your question first for why there are reasons to have this play out in the district courts first. And the reasons are the reasons that other circuits have already given with respect to this jurisdictional provision, and in particular, 1369b2, which is a ban on later challenges in criminal and civil enforcement proceedings. I think that as the Ninth Circuit said, and as the Seventh Circuit said, this jurisdictional provision in particular comes with the peculiar sting of this judicial review ban. And because of that judicial review ban, I think it triggers the presumption of agency action review that was at issue in the Sackett v. EPA case that we cite. But if this is a rule of national import, which it is, it's a national challenge too, right? But the 1369b2 proviso would ban all later challenges in civil or criminal proceedings if you could have. Let's assume that the rule is upheld. Wouldn't it be appropriate that that question be answered once and for all? No, I don't think so. Especially because this is a definitional rule, as the court's stay ruling indicated, whose ripple effects are going to be unknown and are going to be clarified through case-by-case adjudication. The whole idea here is to have national uniformity. You don't dispute that, do you? No, I absolutely dispute that. That was the idea of the Clean Air Act. You want to have a different definition of water? I dispute the notion that the jurisdiction should be in this court out of concerns for national uniformity. The Clean Air Act clearly indicates that national rules should be subject to initial review in the circuit court, precisely because they're national rules. But Congress decided for a different regime in this case. In this case, there are seven specific types of actions, and none of those seven specific types of actions say national rules should exist in the circuit courts. And so getting back to my initial point about the reading of DuPont, I actually think DuPont was a textual-based reading of subsection E. DuPont talked about the perverse situation of having issue-by-issue rules under subsection F in response to the industry's argument that subsection E should be a-textually interpreted only to reach variance provisions from the affluent limitations. In the process of rejecting that, the DuPont court originally went to the text and said, no, the text says affluent limitation or other limitation. It does not say just the variances. And then it made this policy decision about how the choice Congress had made to allow affluent limitations in E and issue or deny permits in F made sense. But what they do is they read DuPont, they ignore the textual components of DuPont, and only rely on the policy concerns with DuPont. And I think that's mistaken. I think you have to rely on the text as well. And I also disagree kind of with the pragmatic concern about how this should be in the circuit courts for national uniformity's sake, because imagine that as applied context. This rule was issued by both the EPA and the CORE. And that's a pretty good textual clue that it doesn't belong in the circuit courts because the jurisdictional provision says only actions by the administrator. And I think that makes sense because all parties agree. It also doesn't say actions by the administrator alone. It's clearly an action by the administrator. That's true, but I do think the fact that the CORE is here as well is a textual clue that it doesn't belong in this court. Are your challenges here a facial challenge to it? So it's an APA challenge. It's contrary to law because it's contrary to the Supreme Court's decision. It's not an as-applied challenge. You're not looking at the facts. It's a facial challenge. No, that's right. But nevertheless, you say for facial challenges, we should have district courts all over the nation decide the same facial challenge one by one. And also, I assume we don't have jurisdiction. We dissolve the stay so that we go back to the situation it was before where there was a stay in 14 states by the North Dakota District Court. But this rule will be in effect everywhere else until a district court rules otherwise. And that's the result you want. And then you want to litigate it up through the various courts of appeal so that this rule is just unsettled for a long time. So that's the result that Congress wanted. And that's the way... For a facial challenge. I could see that for an applied challenge. If you've got facts that are different in different district courts and the rule is going to have a different outcome, I could understand that. But it doesn't seem to make much sense. And the unless there's a clear indication by Congress that jurisdiction should go into the district courts, the presumption actually is the other way around. The jurisdiction ought to be presumed to be in the circuit court. So a couple of responses, Your Honor. First, we have to respect the choice that Congress has made. This is a choice between efficiency and what I would call accuracy. E.I. DuPont and Footnote 26 said that it benefited from the diversity of views that it had received in that case from the different circuit courts. That's the way our system... That's the presumption that the way our system works. Rules come up through the district courts. The district courts reach decisions. They reach the courts of appeals. The courts of appeals themselves analyze the issue and reach a decision. And then it reaches the Supreme Court in a conflict. That's the presumption of the way our system always works, the way our federalism system works. Congress sometimes departs from that. It departed from that approach in the Clean Air Act where it said that all national rules belong in the circuits immediately. But I don't think it departed from that notion except with the seven specific factors listed in 1369b1. And I don't think any of these factors or any of this rule falls within any of these factors. So I guess there's the textual response first off. When we're looking at what the benefit would be using this Footnote 26 and DuPont as to it percolating up from various district courts, one aspect of that traditionally would be fact finding. But here this is an APA appeal. It's based on the administrative record. So what different analysis or application are these different district courts going to be utilizing here? It's simply a legal question based on the same administrative record. So what benefit does the system then drive from having several district courts looking at this? I think it's just the benefit of looking at the analysis that was in Rapinos and determining the legal consequences of this rule. I also think there's more... Is it simply more eyes on a question produces a better result? Is that it? Yeah, exactly. So that's the way, I think that's what DuPont was absolutely saying, that the percolation through the courts of these issues. So you're not saying this fact finding or supplementing the record or anything. You just think having the benefit of multiple views would produce a better just result. What I'm saying is Congress could have reached that decision and that's why it adopted this jurisdictional rule rather than the rule in the Clean Air Act. With that, I see my time is up. If I could reserve the remainder of my time. Alright, thank you. May it please the court, Martha Mann with the Department of Justice on behalf of the Environmental Protection Agency, the Department of the Army, and the Army Corps of Engineers. Seated at council table is Jessica O'Donnell, also of the Department of Justice. And seated behind us are, from my left to right, Karen Wendolowski with the EPA Office of General Counsel, Vincent Cioppini from the Department of Army General Counsel, and Kyle Shaw with the Army Corps of Engineers Office of General Counsel. Your Honors, the motions for dismissal of the consolidated petitions of seeking review of the Clean Water Rule should be dismissed. First, the rule is another limitation under Section 301 of the Act, which is reviewable under Section 509B1E. And second, the rule governs the issuance of National Pollutant Discharge Elimination System, or NPDES, permits under Section 402 of the Act, and therefore reviewable under Section 509B1F. And Judge McKeague, you mentioned earlier some of the decisions, E.I. DuPont and Crown-Simpson. We stated in the final regulation that the law on Section 509 is not completely in accord. But one thing is clear. When this Court and the Supreme Court has looked at the scope of Section 509, they've read the statute in a practical way and affirmed that the Circuit Courts have original exclusive jurisdiction to review the regulations that govern the National Pollutant Discharge Elimination System. Here, the Clean Water Rule is... Are there any limitations to our jurisdiction, then? Oh, of course there are. What are they, then? Well, and we cited in our brief, Your Honor, many examples, and many of the cases that the movements rely on are examples of cases where EPA moved to dismiss a case filed in Circuit Court seeking review under a provision that's not covered in Section 509. For example, and Mr. Murphy mentioned some of them, for example, a water quality standard that EPA may approve under Section 303, a permit decision made by the Corps of Engineers under the dredge and fill permit program of Section 404. Even Raponos, the case that he cited, was a challenge to an enforcement. It was a defense to an enforcement action brought by the United States. Those are all cases that would belong in District Court. And it is absolutely incorrect. Please understand, the United States has not been inconsistent in this case, and it has not suggested that everything that comes under the Clean Water Act goes to Circuit Court. In fact, the vast majority of EPA's Clean Water Act docket is in the District Courts. And we're not asking the Court to read this case any more broadly than we have in all the other cases that have preceded it. Well, you can tell we're worried about whether an interpretation that you're advancing under either E or F would then swallow up the normal thought that most of these cases start in District Court. And that's a very fair question, Judge McKee. It is absolutely consistent, as I already stated, and I don't want to belabor it, but EPA has time and again gone to Circuit Courts and said, you do not have jurisdiction here, Your Honor, to review the denial of a grant, for instance, or a total maximum daily load that might be generated by a state or by EPA. Those are all actions. There are many, many actions that are not covered under 509. Section 509 is part of the back, well, excuse me, the Clean Water Act's prohibition on discharges into waters of the United States without a permit or other allowance under law. That and the NPDES program is the backbone of the Clean Water Act. That is why when Congress wrote Section 509, the specifically enumerated sections there all pertain to that NPDES program. And this case involves a regulation that speaks to which waters are waters of the United States for purposes of the National Pollutant Discharge Elimination Program and other programs under the Act. Okay, Ms. Mann, if we could separate the jurisdictional arguments for E and F separately, I think it would be helpful. Sure. E's, the language of E is we have jurisdiction in approving or promulgating an affluent limitation or other limitation under Sections 1311, 1312, 1316, or 1345. The problem I have with E is that the definitional section that we're talking about waters of the United States is Section 1362 and that is not listed in subsection E. E says other limitations under 1311, 12, 16, or 45. You want us to apply the definitional section of 62 in that and I don't see it under Section 301A, which is the no discharge mandate under Section 1311, or we all call it 301 in the inside baseball world. Under Section 1311, it states it prohibits the discharge of any pollutant by any person and when the discharge of a pollutant is, as you may have noticed, further defined in the Act, when 301 uses the term discharge of a pollutant, that automatically means a discharge of a pollutant into the waters of the United States. As this court stated in... So those limitations don't mean anything? The different sections, 11, and if they... Oh, they absolutely do and this is an other limitation under Section 301A. It is a rule that defines the scope of waters of the United States. Section 301A is the no discharge mandate. You may not discharge into waters of the United States except in compliance with law. So by defining what waters are the United States are and are not, folks know whether they need a permit or whether they don't. In the National Wildlife Federation versus Consumers Power Company case that this court decided in 1987, the court said there's five things you need to know whether you need a NPDES permit. The first is whether there's a pollutant. The second is whether there's an addition. The third is whether it's to a water of the United States. The fourth is whether it's coming from. The fifth element, which is a point source, is part and parcel of the NPDES permitting process and it's part and parcel of Section 301 discharge mandate saying that you may not discharge into a water of the United States. Next question is how is an expansion of the definition of waters of the United States a limitation? Well, with all due respect, I'll first say that EPA and the Corps and the Army would submit that in many respects it is not an expansion. You don't read the rule as an expansion. I mean, I think it's commonly read as an expansion. I mean, whether it's lawful or not is a different question, but I thought the whole purpose of the rule was to define the boundaries, but also in a way that I think would discourage pollution in the United States by having more control against the pollution. Well, it depends upon whether you consider past practice versus comparing it to the past practice versus the absolute language of the preceding statute. But to get to what I think your real question is, is how is a definition of a water of the United States a limitation on somebody? It defines for dischargers whether you need a permit or not. It defines for state permitting authorities and federal permitting authorities whether you need to require a permit. And it allows somebody who wishes to enforce the act to know whether they can bring an enforcement action in a particular water. So it is a limitation on those. It's consistent with the Virginia Electric Power Company's decision regarding the cooling water intake structure regulations where the court looked at whether there was a restriction on the untrammeled discretion of the industry and on permit issuers. Is your argument better that it's a limitation if in fact it is an expansion? It would be, but I wanted to at least let you know that it's the agency's opinion that this rule does not necessarily expand. But you're correct. You could say, well if it's an expansion then you have new restrictions on somebody. But the relevant question isn't whether there is an expansion or a contraction. It's whether there is a restriction on industry and permit issuers in the absence of any regulation whatsoever. And that's what the court, the Fourth Circuit said in VEPCO, the Virginia Electric Power Company case. And that's what Judge Keeley, the district judge in the Northern District of West Virginia stated when she dismissed the Murray Energy District Court action. Is that you have a restriction on dischargers and on the permit issuers. In fact, I think that the fact that everybody's here challenging this rule and they brought their stay motion claiming that it has an immediate impact on them and that they needed preliminary relief demonstrates the impact and the restrictions upon them. Do you think your point is stronger under E or F? Well certainly we think that National Cotton Council is controlling. And that's the easiest way I think to look at it. It's probably the least tortured way for anybody to look at it. We do think it's controlling and I would like to respond to a couple of the things that Mr. Murphy said. The way that the move-ins have tried to deal with National Cotton Council is to first say that it's wrong, which as we describe in our brief is incorrect. Secondly... It doesn't matter. If we have to file it, if it's precedentially binding upon us, it doesn't matter if it's wrong or correct. We would agree, Judge Griffin, on that point. The second way that they deal with National Cotton Council is to try to recast it in some type of fantastical holding that this was a decision based on some type of de facto permit. That is not what this court said in its decision. This court in no way suggested in its decision that jurisdiction was based upon a finding of a de facto permit. What it said was underlying permitting regulations for the Section 402 NPDES program are reviewable under Section 509B1F at a minimum, which to me suggests that the court may have also, had they needed to, looked to subsection E and perhaps found it jurisdictional under that section as well. The third way that they deal with National Cotton Council is to try to distinguish it. In trying to distinguish it, they say, well, the regulation at issue there, which was a regulatory exclusion under Part 122 of the regulations, only pertains to NPDES permitting. Well, here we have a regulation under Part 122 of the Clean Water Act's regulations that defines what is a water of the United States for purposes of NPDES permitting. And just because that definition has been made consistent in other parts of the Act does not take it out of the 509 bucket. It stays in that bucket. And if there are challenges to the decision to make other definitions of the water of the United States consistent, those are ancillary. They adhere in the same controversy that puts this case before this court. Going to the policy argument, I wanted to be... I had a couple other arguments too, but one was a drive-by ruling, which I don't, I guess there is some, but it was actually, it was a holding of the case. And whether the analysis was extensive or not, I don't think it matters to me. I have to file a holding by my colleagues on a published decision, whether it's well-reasoned, whether it's well-analysed or whatever. And then I think they argue it was factually distinguishable, but all right. What do you have other than, what's your next best argument beyond national cotton? Because this is going to go to the Supreme Court. Well, Judge Griffin may be correct that we're bound by the decision. If it's not well-reasoned or wrong, or it's dicta or whatever, then let's figure out how we can put this in the best cast, if you prevail in this case. You're right, Your Honor. And if you don't think that... First of all, I would acknowledge that yes, there were some movements who said that the National Cotton Council was a drive-by ruling. It was anything but. It was not an extensive ruling in terms of the length of the reasoning, but it was well-cited to E.I. DuPont, the Ninth Circuit case law, in which that court, following Crown-Simpson and E.I. DuPont, said that you need to read this statute practically, and it would be a perverse situation if circuit courts have the ability and the authority to The current Supreme Court would adopt that rule of statutory construction that you have to read statutes practically, rather than by the plain text of it? I mean, haven't the textualists on the Supreme Court more often than not won out on that argument? I cannot speak to what this court would do today, but I can say that under subsection E, we do meet the plain language of the statute. That's the one area they urge you to look at the plain language of the statute. We do as well. You can look, and Judge McKeague was asking, what's our other argument? You can look at subsection E and say, this is another limitation because it restricts dischargers and permit issuers. It's an action by the administrator. It's the agency cited to section 301. It is a rulemaking under section 301, and by defining what waters are waters of the United States that are not, it is a limitation. Congress knew how to give us jurisdiction clearly and unambiguously. There's talk about the Clean Air Act, and here, we really have to do kind of a convoluted construction here to say that we've got it. I mean, why do you think Congress wrote it in this fashion? Is there a reason as opposed to being a little less ambiguous about it? Well, I can't say that I think, and many other courts have reflected that it's perhaps not the best written statute in judicial review provision out there. One of the things, I think the court should try to give meaning to the statute, but clearly the statute has some, the judicial review provision has some problems. In fact, in subsection B refers to actions by the administrator under a provision of the Clean Water Act that has never existed. So that's a pure drafting error on the part of Congress. It's not perhaps the most clearly written, but it's clearly written enough, and the plain text of section 509B1E is something that supports the United States arguments. In fact, despite the fact that they say they want you to rely on a plain text argument, when it comes to subsection E, they revert immediately to all these statutory and construction types of analyses. They don't acknowledge, they say that it's not a limitation because it's definitional, but we have seen time and again circuit courts having jurisdiction of cases of regulations that are definitional. The definition of a new source has been found to be a limitation on a party that's reviewable under section 509. The Virginia Electric case, the Virginia Electric power case, involved the definition or information that had to be considered in defining what was the best available technology for cooling water intake structures. There are many, and in fact, even in National Cotton Council, that regulation was defining what is a pollutant and what is the discharge of a pollutant with respect to the application of pesticides into water. That was a definitional rule. It can be definitional and still be restricting or limiting. That's exactly what Judge Wood said when she dismissed the case brought in the Southern District of Georgia. So they bring a lot of textual arguments where they don't like the plain text, but they pretend that they are asking you to apply a plain text. If you apply a plain text under section 501E, it's a very easy call. And in some respects, that's even easier looking at the text of the statute. So the answer to my question earlier, before we got distracted with National Cotton, is that you think the argument is more clear under E than F? I believe it is, Your Honor. I think it's much clearer under E. So if we go back a step for just a second, I was looking at Judge Wood's definitional question, legal question to the district courts. And I thought he was probably going to say he was going to refer to the functions that district courts usually occupy of looking at facts and taking supplemental evidence and all of that. But he didn't. He basically said it's just a question of getting more judges to look at the same question and eventually more eyes produce a better verdict, I suppose. What's your answer to that? We very much disagree. And I would point the court to this circuit's decision in State of Tennessee versus Harrington. The court there said exclusive jurisdiction in the courts of appeals avoids duplicative review and the attendant delay in expense. That's exactly what you were asking Mr. Murphy about. And review does not require factual findings that would make it more suited to a district court. They can't acknowledge that that's, they can't say that it's true because it's not. And finally... I think you're the one that alluded at one point in the briefs to the fact that there might be need to supplement the record here or there. No, actually I believe it was some of the move-ins who suggested that it would, there are folks in the Oh, I see my time's out. They have moved to supplement the record in that case. But that's not anything that circuit courts haven't handled. I'm sure all three of you have handled it in other cases where you've reviewed an agency decision-making. If I may just conclude, unless you have any other questions. You can finish up. Thank you, Your Honor. The Clean Water Rule is a basic regulation that governs where point sources must obtain a permit in order to comply with the Clean Water Act and thus implements the most fundamental limitation in the Act. We respectfully request that the court affirm its jurisdiction under Section 509B. Thank you. Mr. Murphy? Just a few responses, Your Honor. The first is, while they say there are other things that would fall outside this circuit court jurisdictional provision, they never reconcile the logic of their position here with the logic of their position in these other cases. So they mentioned water quality standards and court permits. They have repeatedly taken the standards that water quality standards are not limitations under 1311 within Subsection E in response to several environmental groups who argue just that because 1311 expressly references water quality standards. So under their position that because 1311 also references navigable waters, anything that is referenced in 1311, it's fundamentally irreconcilable with their view that water quality standards, even though they're in 1311, somehow fall outside of this jurisdictional provision. And take the core permitting process. Again, all parties agree that core permits, in contrast to EPA permits for dredge and fill material, are reviewed in the district courts. That's how it works. If you're down the line, you're a homeowner, and you want to challenge the rule in the core permitting process, what are you supposed to do? Perhaps it will depend on your challenge. If you're challenging the rule as a violation of the statute, it's a challenge to the rule. So you might have to now go to the circuit court. But if you're actually challenging the core's position that your land falls within the rule, then you're not challenging the rule, you're just filing the application on the case, then that might have to go to the district court. And that's fundamentally unfair to homeowners and fundamentally inconsistent with the logic of the Supreme Court nowadays that jurisdictional rules should be as clear as possible so parties don't spend time arguing over side things. With respect to affluent limitation or other limitation, we of course do not run away from that text. I think the text is quite unambiguous when you break it down into its component parts. It says promulgate an affluent limitation or other limitation under these four provisions. Each of the four provisions directs EPA to establish a certain type of limitation on discharges. The baseline is the 13-11 technology-based limits. Then there's 13-12 water quality standard limits. Then there's 13-16 new source limits. And then there's 13-45 sewage sludge limitations. This is not any of those things. In fact, the rule itself concedes that it doesn't impose a regulatory requirement and it's just a definitional rule. So I think that this would be a broad expansion of subsection E. With respect to national cotton, we of course do not, we recognize the court is bound by it, but this itself is a pretty significant expansion of national cotton. National cotton adopted one of the permitting requirements in 13-42. This is a definitional provision that applies across the board to every section of the Act. National cotton said permitting regulations fall within subsection F, but you still have to interpret what permitting regulation means. And I would respectfully suggest that a definitional provision that applies to the entire Act is not one of those. Thank you, Your Honors. Thank you. We appreciate the excellent arguments this afternoon. Court will take the matter under advisement. May adjourn the court. This honorable court is now adjourned. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.